# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOREN BRANT ADAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-249-SPS |

## OPINION AND ORDER

The claimant Doren Brant Adams requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 27, 1951, and was sixty-one years old at the administrative hearing (Tr. 42, 151). He has a twelfth grade education, training in cabinetmaking, and has worked as a cabinet maker and installer (Tr. 42-43, 172). The claimant alleges he has been unable to work since August 15, 2009 due to stroke, back problems, numbness in both arms, blind in right eye, arthritis in both hands, and pain in right leg (Tr. 171).

## Procedural History

On May 31, 2011, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 147-155). His applications were denied initially on September 19, 2011 and on reconsideration on November 16, 2011 (Tr. 83-91, 94-99). ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated November 23, 2012 (Tr. 12-31). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal (Tr. 1-5). *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full

range of medium work, *i.e.*, he can lift and/or carry 50 pounds occasionally, and 25 pounds frequently; can stand and/or walk about six hours total during an eight hour workday and sit about 6 hours total during an 8 hour workday. He can perform semi-skilled work (work which requires some detailed skills, but does not require doing more complex work duties) where interpersonal contact with supervisors and coworkers is on a superficial work basis, and where he will only have occasional contact with the general public (Tr. 19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there were jobs that he could perform, *i. e.*, laborer (hoisting), dishwasher, and laundry worker (Tr. 30).

### Review

The claimant contends that the ALJ: (i) failed to evaluate Dr. Taylor's opinion properly regarding the claimant's hand impairments and (ii) the ALJ's physical RFC is not supported by substantial evidence. The Court agrees with the claimant's first contention and the decision of the Commissioner should therefore be reversed.

The ALJ found that that the claimant had the severe impairments of right coronary artery stenosis, status post endarterectomy; depression secondary to medical condition; and alcohol abuse versus dependence (Tr. 14). The ALJ found the claimant's right eye branch retinal artery occlusion and left eye mild hypertensive retinopathy, hypertension, right shoulder degenerative changes, right leg pain, degenerative changes of the thoracic and cervical spine, seizure disorder, headaches, and insomnia were non-severe impairment (Tr. 14). The medical records relevant to this appeal reveal the claimant sought treatment on October 8, 2009 at Western Arkansas Heart, Lung and Vascular

Surgical Associates after sudden vision loss in his right eye. Claimant indicated he was experiencing some numbness in his right arm on exertion and some paresthesia in his left arm. Dr. Jaggers reported that claimant's vital signs were stable; HEENT exam was unremarkable; his neck was supple with a soft right carotid bruit; lungs were clear to auscultation; his heart had a regular rate without murmurs, rubs or gallops; abdomen was soft and non-tender; claimant had no palpable pulses in his right arm, but had palpable pulses in his left arm; femoral pulses were present bilaterally; popliteal and pedal pulses were present but decreased; neurologic exam showed no focal deficits. Dr. Jaggers prescribed Plavix 75 mg daily, Zoloft 50 mg daily and referred claimant for a CTA of carotids and thoracic aorta as well as an echocardiogram (Tr. 284-285, 301).

An October 16, 2009 CT angio of claimant's neck revealed 60% stenosis at the origin of the right internal carotid artery related to densely calcified plaque as well as plaque at the origin of the left external carotid artery (Tr. 283). An echocardiogram conducted that same day showed an ejection fraction of 70% and trace tricuspid valve insufficiency (Tr. 293). A CT angio of claimant's thorax aorta revealed no significant abnormality of the thoracic aorta other than mild atherosclerotic changes, however, emphysematous changes were noted in each lung, with small nodules in both upper lobes and the right middle lobe, likely granulomatous (Tr. 301).

On November 11, 2009, Dr. Jaggers informed the claimant that he could either be continued on Plavix 75 mg daily or he could proceed with a right carotid endarterectomy. The claimant was initially reluctant to undergo surgery, but ultimately decided to proceed with the surgery because he was so worried about having further emboli to his eye that he

felt he was not functional (Tr. 315, 312). Dr. Jaggers performed a right carotid endarterectomy using Dacron patch angioplasty and a biopsy of an enlarged cervical lymph node on February 11, 2010 (Tr. 291, 280). The discharge summary report indicates that the claimant did reasonably well and was discharged on February 14, 2010 with prescriptions for Librium to relieve alcohol withdrawal symptoms and Norco for pain control. The discharge summary report also indicates that the claimant was advised to seek counseling for substance abuse. (Tr. 291).

Dr. Walz completed a psychological consultative examination with the claimant on August 8, 2011. The claimant conveyed that he was suffering from extreme memory loss, severe depression, and violent mood swings. He indicated he had trouble sleeping and that he obsessively counts. Dr. Walz noted the claimant looked older than his stated age, he smelled slightly of alcohol, and his facial expression appeared to be quite grim and sad. She concluded his intellectual functioning was in the average range, his social skills were impaired by his dour presentation, his ability to attend and sustain concentration on basic tasks was impaired, and his speed of information processing was slow. She diagnosed him with depression secondary to medical condition; rule out cognitive disorder, secondary to reported stroke (mild); rule out exaggeration of symptoms; alcohol abuse vs. dependence; and assigned him a Global Assessment of Functioning (GAF) score of 55 to 60 (Tr. 358354-359).

Dr, Taylor completed a physical consultative examination with the claimant on August 26, 2011. He noted the claimant's chief complaints were chronic pain; weakness; depression; arthritis in his hands; pain in his neck, low back, shoulder and legs; night

sweats; mood swings; poor vision; history of seizures; and poor balance. He noted the claimant was agitated; he had decreased range of motion in his neck; his back was tender to palpation in the lumbar spine; he had an increased heartrate of 120 beats per minute; he had a safe, stable gait and did not use an assistive device; he was unable to flex his long fingers completely; his grip strength was 4/5 and his dexterity was 3/5. Dr. Taylor diagnosed claimant with degenerative joint disease in the shoulders and low back, osteoarthritis/degenerative joint disease in his hands, anxiety/depression, insomnia, atherosclerosis, history of vascular retinopathy, hypertension, and question of seizure disorder (Tr. 363-370).

On April 16, 2012 the claimant presented to Carl Albert Community Center with complaints of depression, decreased motivation, decreased sleep, flashbacks from a motor vehicle accident, and decreased memory. Dr. Nagumalli diagnosed the claimant with depression secondary to medical condition, posttraumatic stress disorder and nicotine dependence. Dr. Nagumalli continued claimant's treatment with Zoloft and added Trazadone for sleep and Vistaril for anxiety (Tr. 401-402).

On May 3, 2012 the claimant presented to Dr. Tracy Baker for a disability discussion. Dr. Baker noted the claimant had very erratic eye movements; he had prominent body tremors which were worse with movement, and which made it difficult for him to use his feet and hands; he had an abnormal prominent dysfunctional gait; and he walked with one crutch. Dr. Baker diagnosed the claimant with epilepsy, recurrent seizures, and late effects of cerebrovascular disease and prescribed Phenytoin for seizures. (Tr. 419-425). That same day, Dr. Baker also completed a series of medical

source statements in which he opined that the claimant would miss three or more days from work because of his weakness, inability to walk far, tremors, and pain. Dr. Baker's opinion regarding the claimant's sedentary work requirements show that be believed the claimant could not stand and/or walk up to two hours in an eight hour workday; he requires the use of an assistive device for even occasional standing and/or walking; he could sit for up to six hours in a normal seated position; he could not lift and carry 10 pounds, but could lift 5 pounds on a repetitive basis with difficulty; he would have to take unscheduled breaks during an eight hour day; he could not sustain activity at a pace and with the attention to task as would be required in a competitive workplace; he would have difficulty concentrating; he could not sustain normal work stress; and he did not expect the claimant to sustain employment because of his diffuse nerve dysfunction and tremors caused by his stroke (Tr. 405-406). Dr. Baker noted on the Stroke Residual Functional Capacity Questionnaire that he had consulted with the claimant one time for 30 minutes; the claimant had a thrombotic stroke and a seizure disorder; his prognosis was fair; he had sustained disturbance of gross and dexterous movement or gait and station; his symptoms interfere with attention and concentration; he can walk less than one city block without rest; he can stand for five minutes before needing to sit down, walk around, etc.; he would need to frequently take 15-30 minute unscheduled breaks; he could rarely lift 20 pounds or less and could never lift 50 pounds; he could never twist, stoop, crouch, or climb ladders and could rarely climb stairs; he could use his hands to grasp, turn, or twist objects 5% out of an 8 hour workday; he could use his arms for reaching 5% out of an 8 hour workday; he could never use his fingers for fine manipulation; he needed to avoid

concentrated exposure to extreme cold and heat, high humidity, fumes, odors, dusts, gasses, cigarette smoke, soldering fluxes, solvents/cleaners and chemicals; and the claimant was incapable of even a "low stress" job because of his depression, anxiety and tremors (Tr. 407-412).

On July 12, 2012, Dr. Nagumalli, Mary Green, MS, LPC Candidate, and Dr. Angela Torres completed a medical sources statement concerning the claimant's work related mental health limitations. In it, they opined the claimant would be absent from work about 3 or more days per month; he can understand, but not remember or carry out simple limitations; can't make simple work-related decisions; can't respond appropriately to supervision; can't respond appropriately to co-workers; can't respond appropriately to work situation; can't deal with changes in routine; can't maintain concentration and attention for extended periods; can't handle normal work stress; requires unscheduled breaks; and they did not expect the claimant to sustain employment because of his depression, sleep disturbance, irritability, and apathy (Tr. 427-428). They assessed the claimant with a current GAF score of 45 and listed his diagnoses as major depressive disorder, chronic pain due to trauma, and severe impairment of the eye (Tr. 430).

Additionally, the claimant's ex-wife completed a Third Party Function Report based on the claimant's abilities. She indicated that he sits in the living room and watches television for the majority of his day, does not bathe regularly or perform normal hygiene tasks, and does not eat or sleep much (Tr. 191). She reminds him to take a shower, but he does not need to be reminded to take his medication (Tr. 192). The claimant's cooking entails preparing one sandwich a week and he does not do any

household chores (Tr. 192). She also stated that he does not go outside very often and that he never goes anywhere on a regular basis (Tr. 192-193).

At the administrative hearing, the claimant testified he had a stroke and his health has not been the same since. He stated since the stroke he has memory problems, nerve problems, blindness in one eye, worsening vision in the other eye, seizures, and balance problems (Tr. 44). He said his pain and depression were better with medication, but he still has bouts of crying spells and constant anxiety. (Tr. 47-49). He uses a crutch to keep his balance because he falls at least once per week (Tr. 49-50). He stated he was prescribed Valium to calm his nerves, but it didn't work and his hands still shake (Tr.50). Additionally, he testified that he is scheduled for x-rays of his hip and back because he believes he has arthritis stemming from a motor vehicle accident injury that was never treated (Tr. 50).

In his written opinion, the ALJ extensively summarized the claimant's hearing testimony and the medical evidence. In discussing the opinion evidence, the ALJ mentioned Dr. Taylor's report several times, but failed to provide any analysis or assign any weight with regard to his assessment (Tr. 15-16). Additionally, the ALJ stated the claimant "exhibited no abnormal hand findings on any other occasion" thus ignoring the fact that Dr. Baker noted the claimant had difficulty using his hands due to tremors and had much difficulty doing fine movements of his hands (Tr. 425). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining

what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ mentioned Dr. Taylor's report several times, but provided no analysis at all in relation to the pertinent factors. Additionally, he ignored evidence from Dr. Baker that supported his ultimate assessment. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

Because the ALJ failed to properly evaluate the opinion of Dr. Taylor, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**